

**ORDERED in the Southern District of Florida on June 20, 2011.**

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| In re: | Case No. 10-20733-BKC-AJC |
| HARBOUR EAST DEVELOPMENT, LTD. | Chapter 11 |
|                    Debtor.          / | Adv. No. 10-03667-BKC-AJC-A |
| JUAN MAURICIO CUELLAR, an individual; and JAMES MILANA, an individual, | |
|        Plaintiffs,<br>vs. | |
| HARBOUR EAST DEVELOPMENT, LTD., a Florida limited partnership; and BLASS & FRANKEL, P.A., a Florida corporation, | |
|                  Defendants.       / | |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON COUNTS II, IX AND X**

THIS MATTER came before the Court on March 31, 2011 at 11:30 a.m., for a hearing on

Plaintiffs', Juan Mauricio Cuellar and ("Cuellar") and James Milana ("Milana") (collectively,

"Plaintiffs") *Motion for Partial Summary Judgment on Counts II, IX, and X with Incorporated Memorandum of Law* [D.E. # 19] (the "Motion") against Harbour East Development, Ltd. ("Harbour East" or the "Debtor") and Blass & Frankel, P.A. ("Blass & Frankel").

The parties concede that there are no material facts in dispute. On April 22, 2010, Harbour East filed its bankruptcy petition. On October 25, 2010, Plaintiffs filed this adversary proceeding against Harbour East and Blass & Frankel for, *inter alia*, rescission under § 718.202(5), Florida Statutes (Counts II and IX) and to impose a constructive trust or equitable lien on any deposits being held in escrow by Blass & Frankel (Count X).

On or about August 20, 2005, Cuellar executed a preconstruction purchase agreement ("Purchase Agreement") for Unit 12C in Cielo on the Bay, a Condominium (the "Condominium"). On or about May 16, 2005, Milana executed a Purchase Agreement for Unit 12D in the Condominium. Harbour East is the "Seller" and "Developer" under the two Purchase Agreements.

Cuellar paid $170,000.00 in preconstruction deposits under his Purchase Agreement to Harbour East. Milana paid $147,000.00 in preconstruction deposits under his Purchase Agreement to Harbour East. Milana's Purchase Agreement contained the legend required by Fla. Stat. § 718.202(3) (the "Legend") conspicuously printed in boldfaced type on the first page of the contract and immediately above the place for the signature of the buyer.

The Purchase Agreement that Cuellar executed contained the Legend on the second page of the contract, albeit above the place for the signature of the buyer. For each of Plaintiffs' Purchase Agreements, Harbour East established a single escrow account per unit with Blass & Frankel.

Cuellar sought summary judgment on Count II of the complaint for Harbour East's alleged failure to comply with the Legend requirement contained in Fla. Stat. § 718.202(3). Plaintiffs also sought summary judgment on Counts IX and X for Harbour East's establishment of a single escrow account for the deposits.

Harbour East asserts that, even though the Purchase Agreement for Unit 12C did not contain the Legend on the first page, the Legend appears above the place for the signature of the buyer on the second page, in boldfaced type:

> **ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.**

The Legend contains the language required by Section 718.202(3) of the Florida Statutes. As stated in Harbour East's supporting affidavit of Mario Egozi, the Form of Agreement for Sale contained in the Condominium Documents has the Legend appearing conspicuously printed in boldfaced type on the first page. However, as admitted, the reformatting of the first page of the Form of Agreement for Sale (from 11" x 14" paper to 8 1/2" x 11" paper) pushed the Legend to the second page of the Cuellar Purchase Agreement. Harbour East further argues that, even though it did not have two separate escrow accounts, its accounting of the deposits is sufficient to comply with Florida Statutes.

The Court has considered the arguments of the parties and has reviewed the unambiguous Florida Statutes at issue and, based upon the foregoing undisputed facts, Plaintiffs are entitled to judgment as a matter of law.

### I. Cuellar Is Entitled To Summary Judgment On Count II Due To Harbour's Failure To Comply With The Disclosure Requirements Under Section 718.202(3), Florida Statutes

Section 718.202(3), Florida Statutes, provides that a condominium purchase contract, such as the ones Plaintiffs signed with Harbour East in this case, must contain a specific legend[1] regarding the developer's use of the escrow monies "conspicuously printed or stamped in boldfaced type **on the first page of the contract <u>and</u>** immediately above the place for the signature of the buyer ...." (emphasis added). Failure to do so "renders the contract voidable by the buyer, and, if voided, all sums deposited or advanced under the contract shall be refunded with interest ...." § 718.202(5), Fla. Stat. (2010). Recently, a Florida circuit court awarded rescission of a condominium contract to the buyer for failure to comply with section 718.202(3). *See Teta Property LLC v. Work*, Case No. 2007-32152-CICI (7th Jud. Cir. Apr. 23, 2010).

Here, it is undisputed that the section 718.202(3) disclosure is missing from the first page of Cuellar's contract.[2] The failure is a *per se* violation of the statute and renders the contract voidable by the buyer. The Court disagrees with Harbour East's position that the appearance of the Legend above the signature(s) of the buyer on the second page is sufficient to comply with the statute; the applicable statute requires both the Legend on the first page and that same shall be above the buyer's signature. As such, the Court will enter summary judgment in Cuellar's favor on Count II.

---

[1] Section 718.202(3), Florida Statutes states that the following legend must be "conspicuously printed or stamped in boldfaced type on the first page" of the contract: "ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER."

[2] By contrast, the required disclosure does appear on the first page of Milana's contract.

## II. Both Plaintiffs Are Entitled To Prevail On Count IX Based On Harbour East's Failure To Establish Separate Escrow Accounts In Accordance With Section 718.202(3), Florida Statutes

The Court further finds that Harbour East violated section 718.202(3) by failing to establish separate escrow accounts to hold Plaintiffs' deposits.

The requirements of the statute operative at the time Plaintiffs paid their deposits are the subject of a recent opinion of the Eleventh Circuit Court of Appeals, *Double AA Int'l Inv. Group, Inc. v. Swire Pacific Holdings, Inc.*, 637 F.3d 1169 (11th Cir. Apr. 4, 2011), affirming in part the 2010 opinion of the Honorable Cecilia M. Altonaga respecting the issue before this Court. *Double AA Int'l Inv. Group, Inc. v. Swire Pacific Holdings, Inc.*, 2010 WL 1258086 (S.D. Fla. Mar. 30, 2010). *See also, Double AA Int'l Inv. Group, Inc. v. Swire Pacific Holdings, Inc.*, 674 F. Supp. 2d 1344 (S.D. Fla. 2009). Upon closely examining the text and history of section 718.202, Judge Altonaga held that the statute "requires developers of preconstruction condominiums to maintain separate escrow accounts for the deposits of buyers." *Double AA*, 2010 WL 1258086, at *18. Specifically, it "requires developers to keep a buyer's protected deposits in a separate account from the construction deposits," *id.*, meaning that the developer must "establish two separate escrow accounts if a buyer deposits more than 10 percent of the purchase price." *Double AA*, 674 F.Supp. 2d at 1350. The Eleventh Circuit affirmed the holding stating that, "even if a separate accounting of the escrowed deposits satisfies the requirements of § 718.202, the district court found that the accounting practices here failed to meet even this standard."

Here, it is not disputed that both Plaintiffs' deposits were placed into a single escrow account with Blass & Frankel P.A. Because both deposits amounted to greater than 10 percent of the respective purchase prices for the units under contract, the failure to establish two separate accounts for each deposit violated section 718.202(3).

Harbour East argues that it should be absolved of liability based on a legislative amendment to section 718.202 that was passed in 2010, several years after the escrow account was created. Pursuant to Ch. 2010-174 of the Laws of Florida, Section 14, Subsection (11) was added to Fla. Stat. §718.202 to read:

> 718.202 Sales or reservation deposits prior to closing. –
>
> (11) All funds deposited into escrow pursuant to subsection (1) or subsection (2) may be held in one or more escrow accounts by the escrow agent. If only one escrow account is used, the escrow agent must maintain separate accounting records for each purchaser and for amounts separately covered under subsections (1) and (2) and, if applicable, released to the developer pursuant to subjection (3). Separate accounting by the escrow agent of the escrow funds constitutes compliance with this section even if the funds are held by the escrow agent in a single escrow account. It is the intent of this subsection to clarify existing law.

The Court finds Harbour East's argument unpersuasive because the legislative amendment in this instance cannot be applied retroactively.

As the Florida Supreme Court has held, "[t]he general rule is that a substantive statute will not operate retrospectively absent clear legislative intent to the contrary . . . ." *State Farm Mutual Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 61 (Fla. 1995). "Even when the Legislature does expressly state that a statute is to have retroactive application, this Court has refused to apply a statute retroactively if the statute impairs vested rights, creates new obligations, or imposes new penalties." *Id.*; *see also Ramcharitar v. Derosins*, 35 So.3d 94, 98 (Fla. 3d DCA 2010) ("In the absence of clear legislative intent to the contrary, a law is presumed to operate prospectively.").

Here, the 2010 legislative amendment bears no legislative intent – much less "clear legislative intent" – that the amendment operates retroactively. *See Weingrad v. Miles*, 29 So. 3d 406, 410 (Fla. 3d DCA 2010) ("Without clear legislative intent to the contrary, substantive

6

statutes will not operate retrospectively."). The statue at issue is a substantive statute, as opposed to procedural statute, because the amendment eliminates the developer's duty to establish two separate escrow accounts, as well as the buyer's right to revoke the purchase contract where the developer establishes only one account. *See id.* at 409 ("Substantive law prescribes duties and rights, whereas procedural law concerns the means and methods to enforce those duties and rights."). The Court finds that Plaintiffs' rights had vested at the time the deposits were placed into a single escrow account; if the amendment is applied retroactively, it would impair these vested rights. Accordingly, the Court will not retroactively apply the 2010 amendment to section 718.202, Fla Stat. The Court will enforce the Plaintiffs' substantive right to void the purchase contracts.

The words "clarify existing law" in the amendment do not change the analysis. As the Florida Supreme Court has held, "Subsequent legislatures, in the guise of 'clarification,' cannot nullify retroactively what a prior legislature clearly intended." *Kaisner v. Kolb*, 543 So. 2d 732, 738 (Fla. 1989) (citing Art. I, §10 Fla. Const.). Here, the amendment repeals the developer's obligation to establish two escrow accounts, and it repeals the buyer's right to revoke the contract where only one account is established. As the Southern District of Florida observed, the Florida legislature's clear intent to require two separate escrow accounts dates back to 1974. *See Double AA*, 2010 WL 1258086, at *10-*14. Given the passage of time, the amendment cannot be considered a clarification of original legislative intent. *See Fla. Farm Bureau Cas. Ins. Co. v. Cox*, 943 So.2d 823 (Fla. 1st DCA 2006) ("When several years intervene between the original enactment of a statute and some purportedly clarifying amendment, courts decline to interpret the amendatory language as clarifying the original intent of the Legislature."); *McKenzie Check Advance of Fla., LLC v. Betts*, 928 So.2d 1204, 1210 (Fla. 2006) (seven-year gap between

enactment of original statute and subsequent amendment was too long to view the amendment as merely a clarification of legislative intent for purposes of construing the original statute); *Parole Comm'n v. Cooper*, 701 So.2d 543, 544-45 (Fla. 1997) (ten years was too long to function as an affirmation of prior legislative intent).

As such, summary judgment will be entered in favor of both Plaintiffs on Count IX. Because Plaintiffs are entitled to the return of their deposits, the Court will also enter judgment on Count X which seeks an order requiring Blass to refund any deposit funds still in its possession to Plaintiffs.

Based on the foregoing, it is

ORDERED and ADJUDGED as follows:

1. The Plaintiff's *Motion for Partial Summary Judgment on Counts II, IX, and X* is GRANTED and judgment will be entered in favor of Plaintiffs on Counts IX and X of the Complaint and in favor of Plaintiff Cueller on Count II of the Complaint, rescinding the purchase contracts between Cuellar and Harbour East and between Milana and Harbour East and awarding (i) Cuellar judgment against Harbour East in the amount of $170,000.00, plus pre-judgment interest from the date that deposits were made through the date of this Order, and (ii) Milana judgment against Harbour East in the amount of $147,000.00, plus pre-judgment interest from the date that deposits were made through the date of this Order.

2. Blass & Frankel P.A. is directed to return that portion of Plaintiffs' deposits remaining in escrow to Plaintiffs by delivering payment to Plaintiffs' attorneys, Beck & Lee, P.A.

###

Submitted by:

Elizabeth Lee Beck, Esq.
BECK & LEE BUSINESS TRIAL LAWYERS
66 West Flagler Street, Suite 1000
Miami, Florida 33130
Telephone: 305-789-0072
Facsimile: 786-664-3334
Fla. Bar No. 020697
elizabeth@beckandlee.com

**Copies Furnished to:**
Elizabeth Lee Beck, Esq. is directed to mail a conformed copy of this Order to all interested parties immediately upon receipt of this Order and shall file a certificate of service with the Clerk of the Court.